UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

IN RE:

CRAIG W. MAIKE,

       Debtor.

THOMAS W. McDONALD, JR., *Chapter 13 Trustee*,       17-cv-10080-BC

       Appellant,       Honorable Thomas L. Ludington

vs.

CRAIG W. MAIKE, *Debtor*

       Consol Appellant,

vs.

UNITED FINANCIAL CREDIT UNION,

       Appellee.
_____/

## **OPINION AND ORDER AFFIRMING ORDER OF THE BANKRUPTCY COURT**

This consolidated bankruptcy appeal was initiated by Debtor Craig Maike and Chapter 13 Bankruptcy Trustee Thomas W. McDonald (together "Appellants"). The bankruptcy proceeding at issue was the subject of a previous appeal to this Court by Appellee United Financial Credit Union ("UFCU") on September 9, 2015. *See in re Maike*, Case No. 15-cv-13176 (Sept. 9, 2015) (hereinafter *Maike I*). That appeal was addressed by an opinion dated April 7, 2016. The Court held that 11 U.S.C. § 1322(b)(5) does not allow the plan itself to create defaults at the expense of the protected homestead mortgagee in order to accrue funds for the administrative expense of the debtor's counsel.

Following remand, on January 11, 2017, Appellants initiated separate appeals from a bankruptcy court order denying the Trustee's motion to alter or amend judgment or for reconsideration. In essence, Appellants argue that by ordering the Debtor's attorney to remit $623.63 to the Trustee in order to pay Appellee UFCU, the bankruptcy court misconstrued this Court's previous order and unfairly enriched the mortgagee at the expense of the Debtor's Attorney by requiring Debtor Maike to pay two "gap payments" to the homestead mortgagee for the months of March and April of 2015 upon confirmation of the revised plan.  The appeals were consolidated on March 10, 2017. *See* ECF No. 5.  For the reasons stated below, the order of the bankruptcy court will be affirmed.

## I.

Debtor Maike entered into a note and mortgage agreement with Appellant UFCU on March 2, 2007.  Pursuant to that agreement, UFCU lent Maike $62,000, for which UFCU received a security interest in Maike's primary residence and the right to receive interest at the rate of 8.0 percent on any unpaid balance. The parties agreed that Maike would make monthly payments in the amount of $454.93.  If Maike failed to make such payments as due, he would be in default. UFCU would then have the option to provide Maike notice that failure to correct his default within 30-days would result in acceleration of the balance due on the note.

By 2014 Maike was struggling to make his monthly mortgage payments. Accordingly, on January 24, 2014 Maike and UCFU entered into an agreement modifying the original note. Under the amendment, the monthly principal and interest payment was reduced from $454.93 to $367.36, beginning on February 2, 2014.  BR. 25.  The parties agreed that Maike was relieved from making the December 2, 2013 and January 2, 2014 payments. *Id*.  The parties also agreed to a reduction of the interest rate from 8.0 percent to 5.375 percent, and UFCU agreed to forgive

the past due interest amount of $445.30. *Id*. As part of the amendment, Maike acknowledged that as of January 24, 2014 he still owed a principal balance in the amount of $59,754.80. The modification agreement only addressed Maike's default, and did not otherwise affect either party's rights prospectively under the loan agreement.

**A.**

On February 10, 2015, after again falling behind in his mortgage payments in the amount of $2,515.90, Maike sought Chapter 13 Bankruptcy protection in the Eastern District of Michigan. Maike then filed his proposed Chapter 13 Bankruptcy plan on February 14, 2015 based on the Eastern District of Michigan model Chapter 13 plan. Maike's proposed plan called for making payments into the plan in the amount of $660.00 per month. Pursuant to the model plan, he proposed paying his attorney fees in full, in the amount of $2,910, before beginning monthly payments in the amount of $510.00 to UFCU. UFCU filed an objection to Maike's plan on April 14, 2015, arguing that the plan impermissibly altered its rights to receive payments each month during the pendency of the plan under 11 U.S.C. §§ 1322(b)(2) and 1322(b)(5).

The initial confirmation hearing took place on April 23, 2015. At the hearing, UFCU argued that by allocating all of the plan payments to Maike's attorney's fees prior to payment to UFCU, the plan impermissibly created a post-petition default of Maike's mortgage obligations and altered UFCU's right to receive payments each month in violation of § 1322(b)(2). Maike disagreed, arguing that his attorney fees should be paid first as a priority administrative expense. The Trustee agreed with Maike. Problematically, on that date the Trustee had not received sufficient funds from Maike to pay Maike's attorney, and the bankruptcy court was hesitant to confirm the plan before the plan had accumulated enough funds both to pay Maike's attorney in full and to commence monthly payments to UFCU, the homestead mortgagee. At the urging of

the Trustee, the bankruptcy court therefore decided to adjourn the confirmation hearing until the Trustee had sufficient funds to pay Maike's attorney in full and begin monthly payments to UFCU, which the bankruptcy court calculated to be in late July.

Following adjournment of the confirmation hearing, on May 21, 2015 UFCU filed a motion to compel payments under § 1322(b)(2). Reiterating its objections from the April 23, 2015 hearing, UFCU argued that "§1322(b)(2) and §1322(b)(5) act in concert to require regular contractual payments on a mortgage claim during the pendency of the bankruptcy case when a debtor chooses to treat the mortgage claim pursuant to §1322(b)(5)." At a motion hearing held on July 9, 2015, the bankruptcy court declined to order payments or lift the automatic stay, and reaffirmed its decision to adjourn the confirmation hearing to a time when the Trustee had sufficient funds to pay Maike's attorney in full and begin monthly payments to UFCU. The confirmation hearing was later adjourned to August 20, 2015.

At the time of the August confirmation hearing, the Trustee reported to the bankruptcy court that he had received $3,144.90. Of that, he proposed to pay $2,910 towards Maike's attorney fees under the plan. BR. 182. This left $234.90 available to begin payments to UFCU. This was short of the $503.18 that UFCU was ultimately to receive under the plan each month. At the hearing, UFCU informed the bankruptcy court that because it had not received payments since Maike's initial Chapter 13 filing in February, it was owed an additional $3,019.18 in post-petition arrearage. It also renewed its objections under §1322(b)(2) and §1322(b)(5). The bankruptcy court took the matter under advisement.

On September 3, 2015, the bankruptcy court issued its opinion overruling UFCU's objections. The court concluded that under the plan UFCU would receive its contractual payment of $503.18 each month, that its post-petition arrearage of $3,522.26 would take 28 months to

cure, and that its prepetition arrearage of $2,515.90 would then take 20 additional months to cure. The total arrearage owed to UFCU would therefore be cured within the 60 months required under Chapter 13. On September 4, 2015 the bankruptcy court issued an order confirming Maike's Chapter 13 plan. The trustee was ordered to pay Maike's attorney in full and commence monthly payments to UFCU. UFCU then filed a notice of appeal on September 9, 2015. *See Maike I*, Case No. 15-cv-13176 (Sept. 9, 2015).

**B.**

In *Maike I*, UFCU argued that its rights under 11 U.S.C. § 1322(b)(2) as the holder of the security interest in Maike's principal residence were violated when the bankruptcy court delayed confirmation of Debtor Maike's Chapter 13 Bankruptcy Plan for over four months in order to accrue cash to pay Maike's attorney. Maike disagreed, arguing that the plan reasonably cured his pre-petition and post-petition defaults, and provided payments to UFCU in accordance with 11 U.S.C. § 1322(b)(5). Maike further argued that lump-sum priority payment to his attorney was proper under 11 U.S.C. §§ 1326(b)(1), 507(a)(2), 503(b)(2), and 330(a)(4) B), which together create an administrative priority for payment of debtor attorney's fees.

This Court issued an opinion and order on April 7, 2016, reversing confirmation of the proposed Chapter 13 Plan, and remanding the case to the bankruptcy court. In the opinion, the Court noted that, "[w]hile a plan may modify the rights of holders of most secured claims, § 1322(b)(2) does not allow a plan to modify the rights of a claim secured only by a security interest in real property that is the debtor's principal residence." *Maike I* at 7. Relying on *Nobelman v. American Savings Bank*, 508 U.S. 324, 327 (1993), the Court emphasized that the language of § 1322(b)(2) focuses on the rights of the holders of such claims, not just on the claim itself. However, the Court also relied on *Nobleman* in noting that a homestead mortgagee may

still be affected by a mortgagee's Chapter 13 bankruptcy. Elements of the Chapter 13 Plan that may affect the homestead mortgagee include the automatic stay, pre-petition defaults, and certain post-petition defaults, such as post-confirmation defaults caused by the debtor and certain "gap-payments" created by the structure of the bankruptcy code itself through § 1326(a) (holding that plan payments should begin 30 days after the filing of a Chapter 13 petition).

The opinion and order observed the Code-created tension between the special protections afforded to the homestead mortgagee and the priority afforded to a debtor's attorneys' fees. *See* §§ 1326(b)(1), 507(a)(2), 503(b)(2), and 330(a)(4)(B). However, the Court noted that administrative expenses, such as attorney's fees do not have absolute priority, but under § 1326(b)(1) may be paid *first or concurrently*. The Court therefore found that "the debtor's attorney may not be paid in full at the expense of the homestead mortgagee." *Maike I* at 15.

The Court ultimately concluded that because Maike's post-petition default to the homestead mortgagee was created by the Chapter 13 Plan itself and by court-ordered adjournments of the confirmation hearing, the defaults were not curable under § 1322(b)(5). As explained by the Court:

> While it is true that § 1322(b)(5) may allow cure of post-petition default over a reasonable period of time, the language of that section does not contemplate or authorize a post-petition default created by the plan itself in order to accumulate cash for a preferred creditor – the debtor's attorney. As explained by the Eastern District of Missouri Bankruptcy Court, "[t]he opportunity to cure a default is a shield by which a debtor can heal a delinquent debt. It is not a sword which the debtor can use to further delay payment while the attorney collects a fee." *In re Townsend*, 186 B.R. 248, 249 (Bankr. E.D. Mo. 1994).

*Id.* After distinguishing precedent cited by Appellee and amicus, the Court further explained:

> Neither Appellee nor amicus have advanced any Congressional history suggesting that Congress intended § 1322(b)(5) to allow the plan itself to create a post-petition default in payment to the homestead mortgagee, thereby circumventing the protections expressly provided to that creditor under § 1322(a)(2). Appellee and amicus also do not explain where Congress evidenced an intent for §

> 1322(b)(5) to allow a bankruptcy court to delay confirmation of the plan – thereby delaying payments to the homestead mortgagee in contravention of § 1322(b)(2) – in order to accumulate funds to pay the debtor's attorney. Such delays are not authorized under §§ 1322(b)(2) and 1322(b)(5), and they conflict with the Act's emphasis on tight deadlines and speedy resolution of Chapter 13 plans. Such delays are also inconsistent with § 1324(b), which provides that a Chapter 13 confirmation hearing may be held "not earlier than 20 days and *not later than 45 days* after the date of the meeting of creditors under section 341(a) unless the court determines that it would be in the best interests of the creditors and the estate to hold such hearing at an *earlier date*…." *Id*. (emphasis added).
>
> While post-confirmation default in Chapter 13 cases resulting from the timing provisions of the code or from defaults in payments by the debtor may often be inevitable, and curable under § 1322(b)(5), it does not follow that § 1322(b)(5) allows a Chapter 13 plan to intentionally modify the homestead mortgagee's right to receive payment each month in contravention of § 1322(b)(2). Section 1322(b)(5) exists as a mechanism to cure defaults and maintain payments while a bankruptcy case is pending – it does not exist to allow the plan itself to create defaults at the expense of the homestead mortgagee in order to prioritize payment to debtor's counsel, exclusively.

*Id.* The Court finally observed that the plan-created arrearage not only violated the homestead mortgagee's rights under § 1322(b)(2), but also harmed the Debtor, who accumulated further interest on his unpaid mortgage principal. The Court therefore reversed the bankruptcy court's order affirming the Chapter 13 Plan, and remanded the case for further proceedings.

## C.

Following remand, on June 23, 2016 Maike submitted an amended Chapter 13 Bankruptcy Plan in an attempt to comply with this Court's order. The proposed plan was identical to the previously confirmed plan, except that it revised the Plan's effective confirmation date to the date of the original confirmation hearing: April 23, 2015. *See* ECF No. 15-2. According to Appellee, this revision allowed Maike to credit the plan payments he had been making for the previous 16 months under the previous plan to his payments due under this new plan, thus preventing him from having to restart the five-year period.

At issue on remand was the amount that the debtor's attorney was required to return to the Chapter 13 Trustee for disbursement to UFCU under the revised plan. By retroactively amending the Plan's confirmation date, Maike's May 2, June 2, July 2, and August 2, 2015 payment obligations to UFCU under the note and mortgage agreement were transformed into post-petition post-confirmation payments. These payments had previously been categorized as post-petition pre-confirmation payments. There does not appear to be any dispute regarding the treatment of these payments, and the Trustee conceded that $120.45 should be remitted by the Debtor's attorney in order to pay UFCU.

Contested, however, was the effect of the revised confirmation date on Maike's March 2 and April 2, 2015 payment obligations to UFCU, or the two remaining post-petition pre-confirmation payment obligations. At the time of the initial confirmation hearing in late April, 2015, the Trustee had on hand the total amount of $1,257.96 (two months of plan payments in the amount of $660.00 minus $62.04 in trustee fees). Of that, Maike's plan proposed paying $754.78 to his attorney and $503.18 to UFCU, or one month of mortgage payments. UFCU objected to this aspect of the plan, arguing to the bankruptcy court that the plan would improperly modify its rights as the homestead mortgagee to collect monthly payments. *See* ECF Nos. 15-3, 15-5. UFCU argued that the two payments were not caused by a timing provision of the Bankruptcy Code, but by a deliberate choice of the Debtor's Attorney, the proposed plan, and the Trustee to pay the attorney fees in preference to the mortgage payments. UFCU thus asserted that it should receive two months of mortgage payments, or $1006.36, in order to pay the March 2 and April 2, 2015 payments. Without two months' worth of payments, UFCU argued, Maike would already be in default on his bankruptcy plan upon (retroactive) confirmation. UFCU concluded that the Debtor's counsel should return an additional $503.18 to the Trustee in order

to pay UFCU. UFCU also argued that it was owed an additional $188.69 based on a partial payment Maike made in September of 2015.

After holding a hearing on September 22, 2016, the bankruptcy court issued an order on October 20, 2016, accepting UFCU's arguments regarding the March and April payments, but rejecting UFCU's arguments with regard to the September 2015 defaults as follows:

> Applying the District Court holding to this case, the first payment to United Financial should have been $1,006.36 because two post-petition payments were due. This is the initial payment described by the District Court. The partial payment of $330.00 in August 2015, however, fits squarely in the District Court's language that acknowledges that the Code and the Debtor's post-petition defaults can occur. The Trustee correctly paid $314.49 to United Financial because that was all that was available. When the Debtor paid $990.00 in September 2015, the plan directed the Trustee to pay $503.18 to United Financial. Although United Financial was due another $188.69 ($503.18-$314.49), that default may be cured by section 1325(b)(5) because the Debtor's failure to pay caused the default, not the plan itself.

*See* ECF No. 15-6. In other words, the court reasoned that because two post-petition payments were due on the confirmation date, UFCU should have been awarded $1006.36 at that time instead of the $503.18 that it received. The bankruptcy court therefore ordered the Debtor's attorney to return $623.63 to the Chapter 13 Trustee for disbursement to UFCU. The court then denied the Trustee's subsequent "Motion to Amend/Alter or for Reconsideration." *See* ECF No. 15-7. Both the Trustee and Debtor Maike then initiated separate appeals, which were consolidated on March 10, 2017. *See* ECF No. 5. UFCU has not challenged the bankruptcy court's ruling regarding the September 2015 default on appeal.

**II.**

Final orders of a bankruptcy court are appealable to a federal district court under 28 U.S.C. § 158(a). *In re Gourlay*, 496 B.R. 857, 859 (E.D. Mich. 2013). In the present matter, neither the Trustee nor Debtor Maike have appealed the bankruptcy court's original order

regarding payments under the revised plan, but have only appealed the bankruptcy court order denying the Trustee's motion for reconsideration. An order denying a motion for reconsideration is a final order for the purposes of appeal. *In re J & M Salupo Dev. Co.*, 388 B.R. 795, 800 (B.A.P. 6th Cir. 2008).

A bankruptcy court's denial of a Rule 59(e) motion for reconsideration is reviewed for abuse of discretion on appeal. *Id*. "Under this standard of review, the [lower court's] decision and decision-making process need only be reasonable. The granting of a Rule 59(e) motion is an extraordinary remedy and should be used sparingly." *Id*. (quoting and citing *Pequeno v. Schmidt,* 240 F. App'x 634, 636 (5th Cir. 2007). "A motion under Rule 59(e) is not intended to provide the parties an opportunity to relitigate previously-decided matters or present the case under new theories. Rather, such motions are intended to allow for the correction of manifest errors of fact or law, or for the presentation of newly-discovered evidence." *Id*. at 805.

Appellants argue that the bankruptcy court's order denying the Trustee's motion for reconsideration contained a palpable defect in that it erroneously applied *Maike I*. Specifically, Appellants argue that by ordering the Debtor's attorney to return $623.63 to the Chapter 13 Trustee for disbursement to UFCU the bankruptcy court unjustly enriched UFCU at the expense of the Debtor's Attorney. Under the deferential abuse of discretion standard, the question is not whether this Court's previous order *required* the Debtor's attorney to return $623.63 to the Chapter 13 Trustee for disbursement to UFCU, but whether the bankruptcy court order clearly violated the bankruptcy code or *Maike I*.

In arguing that the bankruptcy court opinion did not contain a clear error of law, Appellee UFCU emphasizes its special status as a homestead mortgagee. As explained in *Maike I*, "[w]hile a plan may modify the rights of holders of most secured claims, § 1322(b)(2) does not allow a

plan to modify the rights of 'a claim secured only by a security interest in real property that is the debtor's principal residence.'" *Maike I* (citing *Nobleman*, 508 U.S. at 327). This applies to "the *rights* of the holders of such claims, not just on the claim itself." *Id*. Such rights include "the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure." *Maike I* (quoting *Nobleman*, 508 U.S. at 329). In light of this law, UFCU argues that upon confirmation it was entitled to a lump sum payment constituting any post-petition pre-confirmation defaults, and that a decision to the contrary would impermissibly violate its special protections under the code.

In countering that the bankruptcy court opinion did contain a clear error of law, Appellants emphasize the exceptions to the homestead mortgagee's protections recognized in *Nobleman* and its progeny. Appellants also emphasize this Court's observation in *Maike I* that "post-confirmation default in Chapter 13 cases resulting from the timing provisions of the code or from defaults in payments by the debtor may often be inevitable, and curable under § 1322(b)(5) …." *Maike I*, at 14. Because the timing of the confirmation hearing is determined by the bankruptcy code, Appellants argue that the bankruptcy court should have found that Maike's post-petition pre-confirmation payments were created by the code itself, and therefore curable under § 1322(b)(5). Appellants conclude that, by requiring such defaults to be cured at the time of confirmation, the bankruptcy court impermissibly enriched the homestead mortgagee at the expense of the debtor's attorney.

Bankruptcy courts have great discretion in deciding how to allocate funds at the time of confirmation. That discretion is bound by a number of code provisions, including the provisions granting the homestead mortgagee special protections and the provisions requiring that the Debtor's Attorney be paid "first or concurrently" with other creditors. *See* § 1326(b)(1). Importantly, Appellants do not assert that the Debtor's Attorney did not receive any payment "first or concurrently" at the time of confirmation, as required by § 1326(b)(1). Instead, it appears as though the Debtor's Attorney received some payment concurrently with the homestead mortgagee's receipt of Maike's post-petition, pre-confirmation default payments. Appellants have not identified any portion of *Maike I*, any provision of the bankruptcy code, or any other rule of law, as they relate to the facts of this case, that *required* the bankruptcy court to direct that the funds on hand at the time of confirmation be more fully allocated to Debtor's attorney fees. Appellants therefore have not identified any palpable defect or clear error of law in the bankruptcy court's decision denying the Trustee's motion for reconsideration. Under the deferential abuse of discretion standard of review, the bankruptcy court's order will be affirmed.

## III.

Accordingly, it is **ORDERED** that the order of the bankruptcy court denying the Trustee's motion to alter or amend judgment or for reconsideration is **AFFIRMED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: August 15, 2017

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 15, 2017.

s/Kelly Winslow
KELLY WINSLOW, Case Manager